IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PIONEER MILITARY LENDING
OF GEORGIA, INC.,

    Plaintiff,

vs.                              CASE NO.: 4:05cv153-SPM/AK

CHARLIE CRIST,
Attorney General of Florida,

    Defendant.
_____/

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

This cause comes before the Court on the motion for preliminary injunction (doc. 7) filed by Pioneer Military Lending of Georgia, Inc. (Pioneer). Pioneer seeks to prohibit the Attorney General from enforcing a subpoena duces tecum served on March 29, 2005 and from engaging in any further investigation of its activities in Florida.

**I.    Background**

Pioneer is a Georgia corporation that makes loans exclusively to military personnel. From December 2001 to March 2003, Pioneer made 216 loans to military personnel who were stationed in Florida, but who were not Florida residents. Pioneer used The Military Solution Corp., a sister affiliate corporation with an office in Orange Park, Florida, to refer loan requests and transmit paperwork between prospective military borrowers in Florida and Pioneer's headquarters in Georgia. Pioneer itself did not maintain an office in Florida.

On July 18, 2003, the Attorney General, through his subordinates in the

Economic Crimes Unit, issued Economic Crimes *Subpoena Duces Tecum* to a non-active sister corporation of Pioneer named Pioneer Military Lending of Florida, Inc. After discussions between counsel for Pioneer and the Office of the Attorney General, for nearly a two year period Pioneer cooperated by producing documents and answering interrogatories. Pioneer alleges that the Attorney General has continued with the investigation and has made clear that it will soon initiate a lawsuit against Pioneer, charging Pioneer with violations of Florida law. On March 29, 2005, the Attorney General's office served another *Subpoena Duces Tecum* on Pioneer.

According to Pioneer, the Attorney General has taken the position that the Florida Consumer Finance Act, Chapter 516, applies to Pioneer and that Pioneer violated Florida law by charging usurious fees and making false and deceptive statements that its loans complied with all applicable state and federal laws. Pioneer contends, however, that its activities do not fall within the scope of Florida law because Pioneer has not made loans to Florida residents and does not maintain an office in Florida. Instead, all of the loans were processed in Georgia, specified Georgia as the applicable law, and complied with Georgia law.

II.     Discussion

To obtain a preliminary injunction, Pioneer must demonstrate (1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction were not granted, (3) that the threatened injury outweighs any harm an injunction may cause the defendant, and (4) that granting the injunction will not be adverse to the public interest. Johnson & Johnson Vision Care, Inc. v. 1-800

Contacts, Inc., 299 F.3d 1242-1246-47 (11th Cir. 2002).  Pioneer has not demonstrated a substantial likelihood of success on the merits.

Pioneer's principal argument against the Attorney General's authority to apply Florida Consumer Finance Act to its business is the Commerce Clause.  The Commerce Clause of the United States Constitution "confer[s] a 'right' to engage in interstate trade free from restrictive state regulation."  Dennis v. Higgins, 498 U.S. 448 (1991).  The Commerce Clause does not, however, prevent states from regulating matters of legitimate local concern, even though interstate commerce may be affected.  Maine v. Taulor, 477 U.S. 131, 138 (1986).

"[L]aws that impose the same burden on in-state and out-of state business interest[s] usually do not violate the Commerce Clause."  Ga. Manufactured Hous. Ass'n, Inc. v. Spalding County, 148 F.3d 1304, 1308 (11th Cir. 1998).  The Florida Consumer Finance Act applies equally to foreign corporations and Florida corporations making loans in Florida.  It is therefore unlikely that application of the Act to Pioneer's loan activities in Florida would violate the Commerce Clause.

A non-discriminatory law will violate the Commerce Clause only if "'the burden imposed on [interstate] commerce is clearly excessive to the putative local benefits.'"  Id. quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).  In applying this test, it is helpful to proceed in three steps.  Pharm. Care Management v. Rowe, 429 F.3d 294, 312 (1st Cir. 2005).  The first step is to examine the putative local benefit of the regulation.  Id.  The second step is to evaluate the burden the regulation places on interstate commerce.  Id.  The third

step is to compare the benefit with the burden to determine if the burden is clearly excessive. Id.

As to the putative local benefit, the Attorney General states that the Florida Consumer Finance Act was promulgated to ensure that only reputable individuals and entities engage in the business of making high-interest loans in Florida. The Attorney General further states that Florida has a legitimate interest in extending the protection of the Act to individuals within its borders, regardless of whether those individuals are legal residents of Florida, particularly given the number of tourists who stay in Florida. In fact, the Attorney General states that Florida would violate the privileges and immunities provision of the United States Constitution if it failed to protect non-residents.

As for the burden placed on interstate commerce, Pioneer argues that applying the Florida Consumer Finance Act to its activities in Florida would make conducting business in Florida too costly. The focus of the Commerce Clause, however, is on the "protect[ion] of the interstate market, not particular interstate firms from prohibitive or burdensome regulation." Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 127-28 (1978). "A nondiscriminatory regulation serving substantial state purposes is not invalid simply because it causes some business to shift from a predominantly out-of-state industry to a predominantly in-state business." Minnesota v. Clover Leaf Creamery, 449 U.S. 456, 474 (1981).

As for a comparison of the burden and the benefit, the putative local benefits are legitimate and substantial. Florida has a regulatory interest in Pioneer's loan activities in Florida. See A.S. Goldmen & Co., Inc. v. New Jersey

Bureau of Securities, 163 F.3d 780, 787 (3d Cir. 1999) ("[W]hen an offer is made in one state and accepted in another . . . both states have an interest in regulating the terms and performance of the contract).  The alleged burden placed on interstate commerce is incidental and appears limited to Pioneer and its particular business model.  The Supreme Court has rejected the "notion that the Commerce Clause protects the particular structure or methods of operation in a retail market." Exxon, 437 U.S. at 127.  Accordingly, the Court finds that applying the Florida Consumer Protection Act to Pioneer's loan activities in Florida is not likely to violate the Commerce Clause.[1]

Pioneer relies heavily on the Eighth Circuit's opinion in Pioneer Military Lending, Inc. v. Manning, 2 F.3d 280 (8th Cir. 1993) to argue a Commerce Clause violation.  Manning is distinguishable because the Missouri regulations at issue required Pioneer Military Lending, Inc. to maintain a full-service office in Missouri.  No such requirement is contained in the Florida Consumer Finance Act.  Furthermore, the Attorney General of Florida has demonstrated that Florida has a legitimate interest in affording non-residents in Florida the protection of state laws, particularly given the large number of tourists and other individuals who may stay within Florida for extended periods of time but are not legal residents.  There is no reason why Pioneer should be exempt from Florida laws simply because its Florida business is targeted at non-Florida residents.

---

[1] For similar reasons, the Court would find that applying the Act to Pioneer is not likely to result in a violation of Pioneer's rights to equal protection and substantive due process because the application would be rationally related to a legitimate state interest.  Likewise, the Attorney General's investigation into Pioneer's activities for compliance with the Act would not likely violate Pioneer's Fourth Amendment rights.

Based on the foregoing, the Court finds that Pioneer has failed to demonstrate a substantial likelihood of success on the merits so as to warrant the issuance of a preliminary injunction. Accordingly, it is

ORDERED AND ADJUDGED:

1. Pioneer's motion for preliminary injunction (doc. 7) is denied.

2. Pioneer's motion for leave to file a reply (doc. 28) is granted. The reply has been considered.

3. The motions to strike affidavits (docs. 24 and 27) are denied.

DONE AND ORDERED this 29th day of March, 2006.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge