IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PIONEER MILITARY LENDING
OF GEORGIA, INC.,

        Plaintiff,

vs.                                       CASE NO.: 4:05cv153-SPM/AK

CHARLIE CRIST,
Attorney General of Florida,

        Defendant.
_____/

**ORDER DENYING IN PART AND GRANTING IN PART
<u>DEFENDANT'S MOTION TO DISMISS</u>**

        This case arises from a criminal investigation conducted by the Attorney General of Florida into the loan activities of Pioneer Military Lending of Georgia, Inc. (Pioneer). Pioneer is a Georgia corporation that makes loans exclusively to military personnel. From December 2001 to March 2003, Pioneer made 216 loans to military personnel who were stationed in Florida, but who were not Florida residents. Pioneer used The Military Solution Corp., an independent contractor with an office in Orange Park, Florida, to refer loan requests and transmit paperwork between prospective military borrowers in Florida and Pioneer's headquarters in Georgia. Pioneer itself did not maintain an office in Florida.

On July 18, 2003, the Attorney General, through his subordinates in the Economic Crimes Unit, issued Economic Crimes *Subpoena Duces Tecum* to a non-active sister corporation of Pioneer named Pioneer Military Lending of Florida, Inc.  After discussions between counsel for Pioneer and the Office of the Attorney General, for nearly a two year period Pioneer cooperated by producing documents and answering interrogatories.  Pioneer alleges that the Attorney General has continued with the investigation and has made clear that it will soon initiate a lawsuit against Pioneer, charging Pioneer with violations of Florida law.  On March 29, 2005, the Attorney General's office served another *Subpoena Duces Tecum* on Pioneer.

According to Pioneer, the Attorney General has taken the position that the Florida Consumer Finance Act, Chapter 516, applies to Pioneer and that Pioneer violated Florida law by charging usurious fees and making false and deceptive statements that its loans complied with all applicable state and federal laws.  Pioneer contends, however, that its activities do not fall within the scope of Florida law because Pioneer has not made loans to Florida residents and does not maintain an office in Florida.  Instead, all of the loans were processed in Georgia, specified Georgia as the applicable law, and complied with Georgia law.

Through this lawsuit, Pioneer seeks to prohibit the Attorney General from investigating and attempting to regulate its business.  Pioneer contends that the Attorney General's actions violate the Commerce Clause of the United States

Constitution, violate Pioneers rights under the Due Process and Equal Protection clauses of the Fifth and Fourteenth Amendments, and violate Pioneer's right to be free from unreasonable searches and seizures as proscribed by the Fourth and Fourteenth Amendments.

**I.      STANDING**

The Attorney General filed a motion to dismiss Pioneer's lawsuit on several grounds, the first of which is lack of standing.  Standing is required before a Court can exercise jurisdiction in accordance with the case or controversy requirement of Article III of the United States Constitution.  To establish standing, a plaintiff must show that "(1) [it has] suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action, and (3), it is likely that the injury may be redressed by judicial action."  <u>Fla. Pub. Interest Research Group Citizen Lobby, Inc. v. EPA</u>,  386 F.3d 1070, 1083 (11th Cir. 2004).   When standing is challenged on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may satisfy the burden of pleading standing, although greater support may be necessary at successive stages of the litigation. <u>Id.</u>

In this case, Pioneer alleged facts to establish that it has suffered an injury and has been threatened with injury sufficient to plead standing.  In particular, Pioneer alleges that the *subpoenas* issued by the Attorney General violate

Pioneer's rights under the Fourth and Fourteenth Amendments because the Attorney General has no basis to investigate Pioneer for violations of Florida law given Pioneer's minimal activities in Florida and its compliance with Georgia law. See Major League Baseball v. Crist, 331 F.3d 1177, 1187 (11th Cir. 2003) (Fourth Amendment prohibits Attorney General from conducting legally baseless investigations). Furthermore, Pioneer alleges that it has been threatened with prosecution by the Attorney General's office. A credible threat of prosecution is sufficient to plead standing. Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 221 F.3d 1211, 1214-15 (11th Cir. 2000) (standing to bring as applied challenge to law can be met by showing a threat of prosecution, likely prosecution, or a credible threat of prosecution).

From a reading of the complaint, it is apparent that the issues in this case are not hypothetical, conjectural, or speculative. Pioneer has been served with a *subpoena* that is allegedly without basis. Pioneer also alleges that it has been threatened with prosecution under circumstances that violate the Commerce Clause and Pioneer's rights to Due Process and Equal Protection. These alleged injuries can be redressed through judicial action and are sufficient to establish standing at the pleading stage. Accordingly, the Attorney General's motion to dismiss as to this ground will be denied.

**II.     Younger Abstention**

The Younger[1] abstention doctrine is a basic jurisdictional principle that requires federal courts to abstain from exercising jurisdiction when there is a pending state criminal proceeding that is capable of hearing the federal issue presented and the exercise of federal jurisdiction would unduly interfere with the state proceeding.  Wexler v. Lepore, 385 F.2d 1336, 1338-41 (11th Cir. 2004).  The doctrine has been extended to apply to civil proceedings.  Id.

Underlying the doctrine is "the longstanding national public policy, based on principles of federalism, of allowing state courts to try cases–already pending in state court–free from federal court interference."  Butler v. Alabama Judicial Inquiry Comm'n, 245 F.3d 1257, 1261 (11th Cir. 2001).  In determining whether abstention is appropriate, a court should consider three factors: (1) whether there is an ongoing state judicial proceeding, (2) whether the proceeding concerns important state interests, and (3) whether an adequate opportunity exists within the proceeding for the federal or constitutional claim at issue to be raised.  31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003).

With respect to the first factor and the circumstances of this case, there is no state judicial proceeding that is pending at this time.  Instead, there is a prior state case, which was pending at the time this case was filed but has since been closed.  In that prior proceeding, Pioneer sought to protect some materials, which

---

[1] Younger v. Harris, 401 U.S. 37 (1971).

it contended were trade secrets, from becoming public record upon compliance with the *subpoena*. On December 17, 2003, the state court concluded that a single document, a customer list, was protected as a trade secret. In that same case, Pioneer challenged another *subpoena* that the Attorney General served on Pioneer Military Lending of Florida, Inc. on April 16, 2004. On June 3, 2004, the state court issued an order denying trade secret protection to Pioneer. The case remained inactive until Pioneer voluntarily dismissed the suit on June 1, 2005.

Although the state proceeding is now closed, pendency for Younger purposes is determined at the time the federal complaint is filed. Jones v. Wade, 479 F.2d 1176, 1181 n.6 (5th Cir. 1973); DeSpain v. Johnston, 731 F.2d 1171, 1177-79 (5th Cir. 1984). Younger continues to apply, even after the case is closed, until appellate remedies are exhausted. DeSpain, 731 F.2d at 1177-78. When, however, all state proceedings are completed, Younger will not preclude determination of the federal issue if the federal litigation would not annul the results of the state proceeding. Wooley v. Maynard, 430 U.S. 705, 711 (1977).

Applying these principles here, the completed state proceeding would not be annulled by the instant federal case, which indicates that the proceeding is not pending for Younger purposes. Id. After all, Younger is not implicated unless a federal injunction would create "undue interference with state proceedings." Wexler v. Lepore, 385 F.3d 1336, 1339 (11th Cir. 2004). Here there is no proceeding, either in process or completed, with which to interfere.

The second factor for applying Younger is whether the proceeding concerns important state interests. In the state court proceeding, Pioneer sought a protective order to block certain documents, including information identifying borrowers and other trade secrets, from being disclosed in a manner that would make them public record. Although Pioneer could have raised its federal constitutional issues in that proceeding, nothing required Pioneer to do so. Wexler, 385 F.3d at 1340 ("[W]e have found no binding precedent requiring federal plaintiffs to raise federal claims in pending state court proceedings where they are also plaintiffs.").

It is doubtful whether the proceeding implicated important state interests as contemplated by Younger given the limited issues involved. Younger protects from interference "'orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions . . . it has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action.'" Id. quoting New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 368 (1989). The Attorney General's *subpoenas* at issue here are part of an executive branch investigation and constitute executive action.[2] While a judicial proceeding took place

---

[2] See Check 'n Go of Florida, Inc. v. State, 790 So. 2d 454, 457-58 (Fla. 5th Dist. Ct. App. 2001) (civil investigative subpoena under 895.06, Fla. Stat., is not a pending charge and its function, to allow investigative agency to collect evidence to determine if a RICO violation has occurred, is distinct from an adjudication); Eight Hundred, Inc. v. State, 781 So. 2d 1187, 1190 (Fla. 5th Dist. Ct. App. 2001) (rules of civil procedure do not apply to civil investigative

concerning the *subpoenas*, the proceedings focused on executive action concerning the treatment of materials turned over pursuant to the *subpoenas* and did not adjudicate the federal constitutional issues that Pioneer seeks to raise now.

The final factor to consider in applying Younger is whether an adequate opportunity exists within the proceeding for the federal or constitutional claim at issue to be raised. Pioneer had an adequate opportunity to raise its claims in the state court proceeding. That opportunity, however, is of no consequence unless there exists a valid reason to deny a plaintiff his chosen forum, such as avoiding unwarranted interference with the state proceeding. England v. La. State Bd. of Medical Examiners, 375 U.S. 411, 415 (1964) (abstention does not require a litigant to submit his federal claims to a state court if proceeding in federal court will not result in undue interference with a state proceeding).

No such interference would happen here given the limited nature of the state proceeding and the fact that it is over. Weighing further against abstention, there is a well recognized right of a plaintiff to a federal forum to raise federal claims, regardless of the ability and opportunity of a state court to adjudicate the claim. See Wexler, 385 F.3d at 1340, 1341; England v. La. State Bd. of Medical

---

subpoena under 895.06, Fla. Stat.); see also Major League Baseball v. Butterworth, 181 F.Supp.2d 1316, 1321 n.2 (a civil investigative demand is simply part of an executive investigation and it is not a court proceeding over which the Florida Supreme Court has rule making authority).

Examiners, 375 U.S. 411, 415 (1964).

At the core of Younger is an interest in preserving comity between state courts and federal courts. Wexler, 385 F.3d at 1341. When the exercise of federal jurisdiction presents no risk of undue interference with state court proceedings, there is no need to apply Younger. In this case, the state proceedings were limited in scope, did not adjudicate the federal constitutional issues, and are now completed. Proceeding with the federal claims raised in this suit in no way interferes with state judicial functions. Accordingly, the Court finds that Younger presents no obstacle to the adjudication of Pioneer's federal claims.

**III.   Pullman Abstention**

Alternatively, the Attorney General argues that Pioneer's federal constitutional claims should be dismissed or stayed on Pullman[3] abstention grounds. Under Pullman, a federal court may abstain from adjudicating a constitutional issue when there is a antecedent question of state law that will either moot the constitutional issue or materially alter the issue. Pittman v. Cole, 267 F.3d 1269, 1286 (11th Cir. 2001).

Pullman abstention is not appropriate in this case because there is no unsettled question of state law that will moot or modify the constitutional issue. The Attorney General suggests that a state court could determine that the

---

[3] R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941).

Attorney General has no jurisdiction to investigate or prosecute Pioneer, thereby obviating the need to proceed with Pioneer's federal case. The Attorney General, however, does not specify any question of state law that would lead to the determination. "'[I]f the state court will merely apply federal constitutional law'" then abstention is not appropriate. Id. quoting Duke v. James, 713 F.2d 1506, 1510 (11th Cir. 1983). "Abstention should not be used as a lever to force the state courts to do the federal courts' work." Id. Accordingly, the Attorney General's motion to dismiss or abate on Pullman grounds is denied.

### IV.  Commerce Clause Claim

The Attorney General argues that Pioneer's Commerce Clause claims should be dismissed for failure to state a valid cause of action. In particular, the Attorney General contends that Plaintiff has not sufficiently alleged that the burden imposed on interstate commerce by the Attorney General's action is clearly excessive in relation to the putative local benefits.

The Commerce Clause of the United States Constitution "confer[s] a 'right' to engage in interstate trade free from restrictive state regulation." Dennis v. Higgins, 498 U.S. 448 (1991). The right is enforceable through an action under 42 U.S.C. § 1983. Id. at 451.

"[L]aws that impose the same burden on in-state and out-of state business interest[s] usually do not violate the Commerce Clause." Ga. Manufactured Hous. Ass'n, Inc. v. Spalding County, 148 F.3d 1304, 1308 (11th Cir. 1998). A

violation does occur, however, when "'the burden imposed on [interstate] commerce is clearly excessive to the putative local benefits.'" Id. quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).  Furthermore, a state law that attempts to regulate commerce occurring wholly outside its borders encroaches on the regulatory powers of fellow states in violation of the commerce clause. Healy v. The Beer Inst., 491 U.S. 324, 336 (1989).

      Pioneer's complaint contains sufficient allegations to state a commerce clause violation based on the Attorney General's exercise of regulatory powers against Pioneer for conduct which Pioneer alleges occurs wholly outside its borders and is regulated by Georgia. Furthermore, since Pioneer did not make loans to any Florida residents, Pioneer alleges that the Attorney General has no legitimate interest in regulating its activities.  This allegation is sufficient to state a commerce clause violation.  See Pioneer Military Lending, Inc. v. Manning, 2 F.3d 280 (8th Cir. 1993) (state had no interest in protecting non-residents from loan activities regulated by another state).  Accordingly, the Attorney General's motion to dismiss Pioneer's complaint for failure to state a commerce clause claim will be denied.

**V.    Equal Protection and Due Process**

      The Attorney General argues that Pioneer's equal protection and due process claims should be dismissed for failure to state valid causes of action. Pioneer, however, has sufficiently pleaded these claims.

Pioneer alleges that the Attorney General is arbitrarily and capriciously relying on Pioneer's relationship with an agent in Florida as a basis for subjecting Pioneer to Florida laws. To satisfy the requirements of the equal protection clause, there must be "a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." <u>Fitzgerald v. Racing Ass'n of Central Iowa</u>, 539 U.S. 103, 107 (2003). Similarly, to satisfy the requirements of substantive due process, regulations must be rationally related to a legitimate government purpose. <u>Ga. Manufactured Hous. Ass'n, Inc.</u>, 148 F.3d at 1307. Although due process and equal protection violations are difficult to prove under these standards, the Attorney General has not demonstrated as a matter of law that Pioneer's claims will fail.

## VI.  Fourth Amendment

As to Pioneer's Fourth Amendment claim, the Attorney General argues that Plaintiff has not alleged in any nonconclusory fashion that its activity is legal, so as to preclude an investigation by the Attorney General. Pioneer has, however, provided sufficient details of its activities to state a valid claim.

The central issue in this case is whether Pioneer's activities in Florida, through its actions in engaging an independent contractor in Florida to solicit

loans to military personnel who are stationed in Florida but who are not Florida residents, are sufficient to trigger a legitimate state interest in regulating Pioneer that is not clearly excessive to the burdens placed on interstate commerce. The Fourth Amendment prohibits the Attorney General from conducting legally baseless allegations. Major League Baseball v. Crist, 331 F.3d at 1187. The Attorney General's investigation into Pioneer's activities would be legally baseless if Pioneer is not legitimately subject to regulation in Florida. Thus Pioneer has stated a valid Fourth Amendment claim.

## VII.   Damages

Finally, as part of its requested relief, Pioneer includes damages in the form of lost revenue or lost profits. Such damages are not available against the Attorney General, who is being sued in his official capacity. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

Based on the foregoing, it is

ORDERED AND ADJUDGED:

1.   The Attorney General's Motion to Dismiss (doc. 23) is granted as to Pioneer's claims for money damages.

2.   On all other grounds, the motion to dismiss (doc. 23) is denied.

3.   The Attorney General's motion for judicial notice (doc. 12) is granted. The documents have been considered.

4.	The Attorney General's motion for leave to file a reply (doc. 36) is granted.  The reply has been considered.

5.	Pioneer's motion to strike (doc. 42) is denied.

6.	The Attorney General's motion for enlargement of time and stay of discovery (doc. 20) is denied as moot.  The parties shall have up to and including April 28, 2006 to file their Rule 26 joint report, as previously ordered (see Initial Scheduling Order, doc. 17).

DONE AND ORDERED this 29th day of March, 2006.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge